UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CYDNIE DAUNSHAE WASHINGTON,

        Plaintiff,

  v.

ANDREW M. SAUL,[1] Commissioner of
 Social Security,

        Defendant.
_____

**DECISION
and
ORDER**

**19-CV-6297F**
(**consent**)

| | |
|---|---|
| APPEARANCES: | LAW OFFICES OF KENNETH R. HILLER, PLLC<br>Attorneys for Plaintiff<br>KENNETH R. HILLER, and<br>ANDREW JOHN ROONEY, of Counsel<br>6000 North Bailey Avenue, Suite 1A<br>Amherst, New York  14226<br><br>JAMES P. KENNEDY, JR.<br>UNITED STATES ATTORNEY<br>Attorney for Defendant<br>Federal Centre<br>138 Delaware Avenue<br>Buffalo, New York  14202<br>   and<br>KATHRYN L. SMITH<br>Assistant United State Attorney, of Counsel<br>United States Attorney's Office<br>100 State Street<br>Rochester, New York  14614<br>   and<br>FRANCIS D. TANKARD, and<br>PAMELA McKIMENS<br>Special Assistant United States Attorneys, of Counsel<br>Social Security Administration<br>Office of the General Counsel<br>601 E. 12th Street, Room 965<br>Kansas City, Missouri, 64106 |

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On April 7, 2020, this matter was assigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. 13).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on September 16, 2019 (Dkt. 9), and by Defendant on November 15, 2019 (Dkt. 11).

**BACKGROUND**

Plaintiff Cydnie Daunshae Washington ("Plaintiff"), brings this action under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on April 23, 2016, for Social Security Supplemental Security Income ("SSI") under Title XVI of the Act ("disability benefits").  Plaintiff alleges she became disabled on January 1, 2007, based on an antisocial personality disorder and a learning disability.  AR[2] at 131, 175, 179. Plaintiff's application initially was denied on June 23, 2016, AR at 64-80, and at Plaintiff's timely request, AR at 81-83, on May 1, 2018, a hearing was held in Rochester, New York ("Rochester"), via teleconference before administrative law judge Brian Curley ("the ALJ"), located in Lawrence, Massachusetts.  AR at 42-64 ("administrative hearing").  Appearing and testifying at the administrative hearing were Plaintiff, represented by Kelly Laga-Sciandra, Esq. ("Laga-Sciandra"), and vocational expert ("VE") Elaine G. Cogliano ("the VE").

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on July 18, 2019 (Dkt. 7).

On May 9, 2018, the ALJ issued a decision denying Plaintiff's claim, AR at 22-38 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 128-29.  On February 28, 2019, the Appeals Counsel denied Plaintiff's request for review, AR at 1-6, rendering the ALJ's Decision the Commissioner's final decision on Plaintiff's disability benefits application following which Plaintiff commenced the instant action seeking review of the ALJ's Decision.

On September 16, 2019, Plaintiff moved for judgment on the pleadings (Dkt. 9) ("Plaintiff's Motion"), attaching Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum").  On November 15, 2019, Defendant moved for judgment on the pleadings (Dkt. 11) ("Defendant's Motion"), attaching Commissioner's Brief in Response to Plaintiff's Brief Pursuant to Local Civil Rule 5.5 for Social Security Cases (Dkt. 11-1) ("Defendant's Memorandum").  Filed on December 6, 2019, was Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 12) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## FACTS[3]

Plaintiff Cydnie Daunshae Washington ("Plaintiff" or "Washington"), born July 5, 1995, was 11 years old as of January 1, 2007, her alleged disability onset date

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

3

("DOD"),[4] and 22 years old as of May 14, 2018, the date of the ALJ's Decision.  AR at 35, 131, 179, 194.  Plaintiff has never married and has no children and had lived with family but was incarcerated at the time of the May 1, 2018 administrative hearing.  AR at 45-46, 131, 155-60, 186.  Plaintiff attended school through eighth grade in special education classes, dropped out of high school and despite several attempts, has not obtained a GED, nor has Plaintiff ever applied for a driver's license.  AR at 46, 48, 180, 187, 189.  Other than a brief stint at a restaurant, a job which Plaintiff quit because being around people exacerbated her anxiety, Plaintiff has no work experience.  AR at 46, 48-49, 179, 192.

In connection with her disability benefits application, Plaintiff reported her daily activities included attended school for her GED, preparing meals, doing laundry, cleaning, and ironing, and had no problems with personal grooming and care.  AR at 187-88.  Plaintiff was able to go out on her own by walking, riding in a car, and using public transportation, and shopped in stores, AR at 189, and reported having no problems getting along with family, friends, neighbors, or others, yet maintains she has no "social skills."  AR at 190.  Plaintiff, who does not allege any physical impairments or limitations, reported daily participation in sports and weekly attending events.  AR at 191.  Plaintiff can follow both spoken and written instructions.  AR at 192.

Although Plaintiff initially asserted disability based on antisocial personality disorder and a learning disability, AR at 179, in appealing the initial denial of her disability benefits application, Plaintiff asserted that on June 5, 2016, Plaintiff became more depressed and began hearing voices.  AR at 197.  Patient has a history of trauma,

---

[4] Although Plaintiff alleges disability beginning at age 11, Plaintiff clarified at the administrative hearing that she is not seeking disability benefits as a child.  AR at 41-42.

4

including physical abuse by her mother from whose custody Plaintiff was temporarily removed for 10 months beginning when Plaintiff was 10 years old.  AR at 221, 226.  Plaintiff reports being sexually assaulted by several of her brothers for years.  AR at 256-57.  Plaintiff also has a history of acting out and being defiant.  AR at 221, 226.  At age 15, Plaintiff was involved in physical altercations with her mother and two of Plaintiff's four older brothers.  AR at 230.

## DISCUSSION

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  It is not, however, the district court's

function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.    Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

      In the instant case, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 27, 2016, the date of Plaintiff's disability benefits application, AR at 27, and suffers from the severe impairments of affective disorder, personality disorder, post-traumatic stress disorder ("PTSD"), and learning disability, *id.* at 28, and a non-

severe rotator cuff impairment, *id.*, but that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 28-30. Despite Plaintiff's impairments, the ALJ found Plaintiff retains the RFC for a full range of all exertional levels of work, with only non-exertional limitations including the ability to understand, remember, and apply information and focus on and complete simple work-related tasks, maintain concentration, persistence or pace for simple work activities, manage simple social demands, adapt to routine changes and manage herself, but that Plaintiff cannot work in occupations requiring mathematical computations such as using a cash register or making change. *Id.* at 30-33. Plaintiff has no PRW and thus no transferrable skills, *id.* at 33, yet given Plaintiff's RFC, age, limited education and ability to communicate in English, Plaintiff can perform jobs that exist in significant numbers in the national economy including as a hand packer, night janitor, and warehouse worker. *Id.* at 33-34. Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act. *Id.* at 34-35.

     Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis, but argues that in assessing Plaintiff's RFC at the fourth step, the ALJ erred by granting only partial weight to the opinion of consultative examining psychologist Christine Ransom, Ph.D. ("Dr. Ransom"), and finding "more persuasive" the opinion of non-examining State Agency Psychological Consultant A. Chapman, Psy.D. ("Dr.Chapman"). Plaintiff's Memorandum at 8-15. Defendant argues the ALJ's Decision is supported by substantial evidence in the record and that the ALJ did not improperly elevate Dr. Chapman's opinion over Dr. Ransom's opinion. Defendant's

Memorandum at 11-17. In reply, Plaintiff reiterates the ALJ was required to explain why more weight was given to the opinion of Dr. Chapman who did not personally examine Plaintiff, than to that of Dr. Ransom who did examine Plaintiff. Plaintiff's Reply at 1-3. Based on the parties' arguments, the court limits its consideration of whether the weight the ALJ afforded the opinions of Dr. Ransom and Dr. Chapman in assessing Plaintiff's RFC is supported by substantial evidence in the record.

In the instant case, on June 13, 2016, Plaintiff, in connection with her disability benefits application, underwent a consultative Adult Psychiatric Examination by Dr. Ransom. AR at 256-60. Dr. Ransom reported Plaintiff had recently been released from a period of incarceration, was living with her brother's girlfriend, and was attempting to obtain her GED. AR at 256-57. Although Plaintiff was never psychiatrically hospitalized, Plaintiff had received treatment for PTSD and depression on an outpatient basis, including at the correctional facility where she was incarcerated and also received medication for mood swings and problems sleeping but had received no treatment or medications since being released from incarceration in April 2016, but because continued treatment was mandated as a condition of Plaintiff's parole, Plaintiff intended to seek treatment from Catholic Family Center. *Id.* Plaintiff attributed her mental health issues to childhood trauma that included being repeatedly raped by several of her brothers over a period of years, and her psychiatric symptoms included nightmares, flashbacks, intrusive thoughts, anger, fear, depression, mood swings, difficulty being around people and socializing with others, and being socially withdrawn. *Id.* Plaintiff, however, had adequate energy level and concentration, denied suicidal and homicidal ideation, generalized anxiety, panic attacks, manic symptomatology, thought disorder,

cognitive symptoms, and deficits other than a learning disability. AR at 257. Plaintiff did not abuse drugs or alcohol. *Id.* Plaintiff's mental status examination was largely unremarkable except for moderately dysphoric (unhappy) affect, unable to perform simple calculations and serial threes because of math difficulties, and intellectual functioning was in the low average range with extra difficulty with math. *Id.* at 257-58. With regard to Plaintiff's mode of daily living, Dr. Ransom reported Plaintiff was capable of tending to her personal grooming and needs, but needed assistance with cooking, cleaning, laundry and shopping, Plaintiff's poor math skills rendered Plaintiff unable to manage her own funds, and although Plaintiff got along with her brother's girlfriend with whom she lived, Plaintiff avoided family because of trauma and was self-isolating. *Id.* at 258. Despite, as noted, a largely unremarkable examination of Plaintiff, concluding that Plaintiff suffered only a moderately dysphoric affect and deficient math skills, in her medical source statement Dr. Ransom assessed Plaintiff with moderate difficulty following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration for simple tasks, maintaining a simple, regular schedule, learning simple new tasks, performing complex tasks, relating adequately with others and appropriately dealing with stress because of PTSD which was then at a moderate level. *Id.* at 258. Dr. Ransom further considered Plaintiff's PTSD "a moderate psychiatric condition, which will significantly interfere with the claimant's ability to function on a daily basis." *Id.* at 258-59. Plaintiff's prognosis was assessed as "fair to good with treatment as recommended." *Id.* at 259.

On June 23, 2016, State Agency Review Psychologist Dr. Chapman reviewed Plaintiff's medical records, including Dr. Ransom's report. AR at 65-74. Dr. Chapman

found Plaintiff had moderate limitations to understanding and remembering detailed instructions, AR at 71, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, and in the abilities to perform a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  *Id.*  With regard to social interactions, Plaintiff was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors.  AR at 71-72.  Dr. Chapman explained his Mental Residual Functional Assessment ("MRFC") of Plaintiff was based on Plaintiff's history of special education and Committee on Special Education classification of emotional disturbances, and behavioral difficulties resulting in multiple in-school and long-term suspensions, reported history of trauma and sexual assault by several of Plaintiff's brothers, nightmares, flashbacks, mood swings, difficulty being around other people, and prior incarceration, yet Plaintiff's mental status examination showed Plaintiff was cooperative, adequately groomed, normal motor behavior, appropriate eye contact, fluent speech, clear and intelligible voice, coherent and goal directed thought process, intact attention/ concentration and memory, but moderately dysphoric affect.  *Id.* at 72.  Dr. Chapman concluded Plaintiff, despite severe anxiety and personality disorders, "retains the capacity to perform the basic mental demands of unskilled work."  AR at 73.

Despite many similarities in describing, with regard to Plaintiff's functional capacity, Plaintiff's symptoms in the reports of Dr. Ransom and Dr. Chapman, Plaintiff's argument focuses on the fact that Dr. Ransom personally examined Plaintiff, whereas Dr. Chapman merely reviewed Plaintiff's medical records, as well as that the ALJ failed

to pose to the VE a hypothetical that included Dr. Ransom's determination that Plaintiff was moderately limited in understanding, carrying out, and remembering simple instructions, as well as dealing with stress, Plaintiff's Memorandum at 14-15, and the ALJ's pronouncement of Dr. Ransom's opinion as "vague" or inconsistent with other evidence in the record required the ALJ to further develop the record.  Plaintiff's Reply at 2-3.  There is no merit to Plaintiff's argument.

An ALJ may rely on the opinions of both examining medical consultants and non-examining state-agency medical consultants because such consultants are experts in the field of social security disability.  See 20 C.F.R. § 416.927(e)(2)(i) (effective for claims filed before March 26, 2017); Baszto v. Astrue, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."). Further, "[u]nder the applicable regulations, even 'nonexamining sources' may 'override treating sources' opinions, provided they are supported by evidence in the record.'" Netter v. Astrue, 272 F. App'x 54, 55–56 (2d Cir. 2008) (quoting Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir.1993) (citing 20 C.F.R. §§ 404.1527(f), 416.927(f))).

Significantly, Dr. Ransom's assessment is inconsistent with her own clinical observations.  In particular, upon examining Plaintiff, Dr. Ransom found Plaintiff with intact attention, concentration, immediate memory and remote memory, and Plaintiff "could remember adequate detail about her own past personal experience."  AR at 261. Although Plaintiff's intellectual functioning was assessed as in the "low average range" with "extra difficulty with math," id., Plaintiff's "[g]eneral fund of information was

appropriate to experience," and insight and judgment were assessed as "good."  *Id*. Moreover, the ALJ properly determined, AR at 32-33, that Dr. Ransom's opinion failed to explain how Plaintiff's dysphoria and limited mathematical capacity would "significantly interfere with Plaintiff's ability to function on a daily basis." [6]

The ALJ considered these findings as "supportive of Plaintiff's ability to perform simple tasks over the course of a normal workday or workweek."  AR at 36.  Such findings are also inconsistent with Dr. Ransom's assessment concluding that Plaintiff "will have moderate difficulty following and understanding simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule and learn simple new tasks, performing complex tasks . . . ."  *Netter*, 272 Fed.Appx. at 55 (finding ALJ's failure to give controlling weight to examining physician's opinion was not error where the examining physician's opinion that the claimant was disabled was inconsistent with the physician's own clinical observations of the claimant).

Further, inasmuch as Plaintiff complains the ALJ is not permitted to grant greater weight to a non-examining source's opinion when such opinion is not based on a complete record, Plaintiff's Memorandum at 12-13, Dr. Chapman's review of Plaintiff's medical records included Dr. Ransom's opinion, AR at 66, 70, Plaintiff's school records from the Rochester School District, *id.* at 67, a teacher questionnaire, *id.*, Unity at Park Ridge Hospital Behavioral Health System records, *id.*, and records from Catholic Health Center.  *Id.*  Further, the ALJ is not required to contact treating sources to further develop the record to resolve inconsistencies unless there are gaps in the

---

[6] Given the ALJ's correct determination on this issue, it is unnecessary for the court to address the ALJ's reference to Dr. Ransom's opinion as "vague."

13

administrative record, *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) ("where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." (citing *Perez v. Chater,* 77 F.3d 41, 48 (2d Cir. 1996)); in the instant case, Plaintiff fails to identify any such gaps in the record. Accordingly, the ALJ did not improperly grant more weight to the opinion of Dr. Chapman, who did not examine Plaintiff, while granting only some weight to the opinion of Dr. Ransom, who did personally examine Plaintiff.

Nor was the ALJ required to present to the VE a hypothetical that included any limitations the ALJ rejected as not supported by the record. *See Priel v. Astrue*, 453 Fed.Appx. 84, 87-88 (2d Cir. 2011) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)). As discussed above, the ALJ properly found the medical evidence in the record did not support Dr. Ransom's determination that Plaintiff was moderately limited in understanding, carrying out, and remembering simple instructions, and dealing with stress. Discussion, *supra*, at 13. Accordingly, the hypotheticals formulated by the ALJ were supported by substantial evidence in the record.

The ALJ's Decision thus is supported by substantial evidence in the record.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is DENIED; Defendant's Motion (Dkt. 11) is GRANTED.  The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:	August 19th, 2020
	Buffalo, New York